THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DANNY ATOR, Defendant-Appellant.

Third District   No. 74-370

Opinion filed March 31, 1976.

James Geis and Mary Robinson, both of State Appellate Defender's Office, of Ottawa, for appellant.

Frank Yackley, State's Attorney, of Ottawa (G. Michael Prall and F. Stewart Merdian, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Danny Ator appeals from a judgment of conviction by the Circuit Court of La Salle County on a charge of delivery of a controlled substance. The conviction followed a jury verdict of guilty, and as a result of the conviction, defendant was sentenced to imprisonment for a term of not less than 3 nor more than 9 years.

On appeal in this court, defendant basically alleges (1) that the trial court committed reversible error in failing to order production of an informer who was involved in the transaction which resulted in delivery of the controlled substance, (2) that the trial court committed reversible error in failing to order a disclosure to the defendant of certain I.B.I. records, and (3) that there was reversible error in the failure of the trial court to have a record made of the *in camera* proceedings at which the trial judge examined the I.B.I. records.

The record discloses that on April 25, 1973, I.B.I. agent Barrett and United States Treasury Agent Krug, proceeded in an automobile to the parking lot of Mr. Quick restaurant in La Salle, Illinois. In the automobile with them was a paid informer, Hubert Lucas, Jr. According to the testimony of agent Barrett, an automobile driven by Herbert Anderson pulled into the parking space next to them. Defendant Ator was a passenger in Anderson's car. The informer, Lucas, asked Anderson if he had any cocaine and Anderson replied he had "dime bags" (meaning $10 bags of cocaine). Agent Barrett asked to see one, and, according to his testimony and that of the other agent, defendant reached into the glove compartment, took out a tinfoil packet, and handed it to Anderson, who in turn handed it to agent Barrett. Agent Barrett examined the packet and asked for another one. Defendant again reached into the glove compartment and handed Anderson another packet. The packets were delivered for the $10 per bag consideration.

Defendant Ator denied that the transaction had ever taken place, but admitted, on one occasion, he had been with Anderson when they pulled

into the Mr. Quick lot. Defendant testified that at that time someone walked up to Anderson's side of the automobile and asked Anderson if he had anything to sell. Anderson agreed to talk to the man's friend about a sale. The second man approached and asked Anderson for a "dime bag of coke." According to defendant's testimony, Anderson reached into his own pocket and produced a tinfoil packet which he exchanged for $10. According to the defendant, the man asked for another packet and Anderson asked defendant to get Anderson's wallet out of the glove compartment, which defendant did. Anderson, defendant stated, removed a second tinfoil packet from the wallet and sold it to the man for $10.

On March 14, 1974, a hearing was held on defendant's motion for production of the informer. The State stipulated that the informer was an eyewitness to and a participant in the alleged transaction. The court ordered the State to disclose the informer's name and his last known whereabouts, and stated that defendant should attempt to locate the informer on the basis of the information disclosed by the State. The trial court further noted that if defendant was unable to find the informer, the motion of defendant to produce the informer would be reconsidered.

A month later, when the State had not yet disclosed the name or address of the informer, defendant returned to the circuit court to renew his request for disclosure. On April 15, 1974, the State was again ordered to make the disclosure, and, later that day, defendant was told by the State that the informer's name was Hubert Lucas, Jr., and that his last known address was Box 106, Seatonville, Illinois. It turned out that the address was the residence of the parents of Lucas and that the informer had not lived there for nearly a year.

The trial began nine days later on April 22, 1974. Apparently no effort was made by defendant to report his inability to locate the informer nor was any motion made for continuance of the trial for such purpose. On April 24, 1974, after the State had rested, defendant informed the court that he was unable to locate Lucas and requested a hearing on the motion to produce the informer. The trial judge then ordered a hearing on the motion at that stage of the trial.

At the hearing, the State brought in, without the necessity of a subpoena from defendant, agents Barrett and Runyon, who were the only ones presumably who had knowledge of the informer Lucas. At the hearing, both agents Barrett and Runyon were thoroughly examined by defense counsel. Agent Barrett testified that he had worked with Lucas, sometimes on a daily basis, throughout a 7-month investigation of various persons dealing in narcotics in the area, and that he, Barrett, was in charge of the Lucas file. He paid Lucas approximately $1,800 over that period of time, the final payment being made on October 17, 1973, in the amount of $1,200 reflecting, as expressed by Barrett, the desire of Lucas to be paid

"for him to leave." Barrett testified unequivocally, however, that he never paid the informer to hide himself and that he did not know where the informer was presently residing nor did he know the informer's whereabouts since November 1973. Barrett testified, also, that when the order to locate Lucas was issued, he had requested that steps be taken in his organization to find Lucas.

Agent Damon Runyon of the I.B.I. Peoria office, testified that he had contacted the informer's mother (presumably by telephone) and that she had indicated she did not know where Lucas could be found. Apparently the agent did not identify himself as an I.B.I. agent or indicate that he was from the I.B.I during the conversation with Mrs. Lucas. Agent Runyon also indicated that Lucas was last known by the I.B.I. to be in Peoria, Illinois, working for the Caterpillar Tractor Company at a job which had been secured for him originally by Runyon. Agent Runyon testified that he had last spoken with Lucas (a telephone conversation) about a month before the April 24 hearing. According to agent Runyon's testimony, Lucas gave no indication that he was leaving Peoria.

Defendant also subpoenaed the I.B.I. file on Lucus. The State asserted that the file was confidential and the trial judge, on the basis of an agreement of the parties, examined the file *in camera*. The trial judge found that two documents in the file were, to some extent, tangentially relevant to the issues involved in the April 24 hearing, but that this alone, in view of the evidence presented, did not establish facts which would be required for granting of the motion to produce the informer. The trial court further denied disclosure of the records, based on Supreme Court Rule 412 (Ill. Rev. Stat. 1973, ch. 110A, §412). That section provides that the court may deny disclosure if it finds there is substantial risk to any person of physical harm, intimidation, bribery, etc. which outweighs any usefulness of disclosure to counsel. The trial judge referred to the testimony of Mr. Lucas, Sr., the father of the informer, that threats had been made on the informer's life and the lives of his family. At the close of the hearing, the trial judge ruled that defendant had failed to show that the State had secreted the informer or had directed his absence from the area, and the motion to produce the informer was denied.

Defendant's first contention, as we have noted, was that he was denied due process and his Sixth Amendment right to confront witnesses against him because of the State's failure to produce the paid informer. This involves a determination of whether the State could properly be made to produce the informer under the facts and circumstances in this case.

■■ We note, however, that defendant waited until two days after the trial had begun and 11 days after he had the name and address of the informer, and after the State had actually rested in the trial, before defendant indicated to the court that the defense could not locate the infor-

mer. It seems that if defendant had been seriously interested in finding the informant for use at the trial, defendant could have asked for a continuance prior to the trial on April 22. The State contends that the delay of defendant in bringing the matter to the trial court's attention was designed to effect a dismissal of the charge, after jeopardy had set in, since the jury had been sworn and the State had rested. The State's contention is that the defendant sought to take advantage of his failure to find the informant and of his delay in presenting the motion, rather than to obtain the testimony of an informant. Defendant, in fact, contends that the charge against defendant should be dismissed since the informer was not produced by the State. Since the defendant delayed for a period of two days after the trial had begun and after the prosecution had rested, and for a period of 11 days after he had been supplied with the informer's name and address, without showing any excuse for such delay, defendant's motion for production of the witness was not timely and defendant had waived his right to move for production of the witness by reason of his delay and without showing any circumstances which would justify such delay. We find, therefore, that the trial court properly denied defendant's motion to produce the informer by reason of defendant's delay. By reason of our disposition of this issue, we do not believe it is necessary to discuss whether or not there would have been merit in defendant's motion if it had been timely asserted.

Defendant also contends that the trial court erred in denying defense counsel access to the I.B.I. file as to informer Lucas and, also, that it erred in not making a record of its *in camera* inspection of the file. The ruling of the trial court denying exposure of the I.B.I. file was founded upon Supreme Court Rule 412(i) (Ill. Rev. Stat. 1973, ch. 110A, §412(i)). That section reads as follows:

> "The court may deny disclosure authorized by this rule and Rule 413 if it finds that there is a substantial risk to any person of physical harm, intimidation, bribery, economic reprisals, or unnecessary annoyance or embarrassment resulting from such disclosure which outweighs any usefulness of the disclosure to counsel."

The evidence in this cause clearly indicated that Lucas and his family had been threatened as shown by the testimony of the informant's father at the hearing. Defendant also contends that Rule 412(i) is only applicable to pretrial discovery, and not to proceedings once trial had begun and cites Rule 411 in support of such contention. Rule 411, however, indicates the time when discovery rules are first available, but makes no mention of their unavailability once the trial begins. Even if we were to read Rule 411 as defendant urges, we should note that it was defendant who delayed the hearing, on his motion to produce, until after the trial began. The issue being considered at the hearing, of whether or not defendant has the right

to have the informer produced, was properly a pretrial consideration. Defendant certainly could not prevent the State from asserting the confidentiality of the I.B.I. file, by delaying the hearing until after the case in chief had begun (and, in this case, completed).

■■ Defendant alternatively contends that despite Rule 412, defendant's right to a fair trial cannot be denied because of the risk of harm or annoyance or embarrassment which may result from the production of confidential files. Defendant's entire argument, however, that denial of access to the I.B.I. file denies him a fair trial, proceeds on the assumption that the information contained in the file indicates where the informant could be found or could lead to such information. We have reviewed the file and find nothing therein which would give such information or which could lead to it. The information contained in the file was properly reviewed by the trial court, and properly denied after the *in camera* examination which confirmed that the file contained no information concerning the whereabouts of the informant.

The procedure authorized in Supreme Court Rule 412 adequately protects defendant's right to a fair trial, while at the same time protecting the State from unnecessary disclosures of all of its confidential files. Protection of both defendant's right to a fair trial and the State's confidential files are essential under the law. The decision made by the trial court pursuant to Supreme Court Rule 412 is not, as defendant contends, a decision more appropriately made by defense counsel. If that was the case, then thousands of government files having little or nothing to do with the rights of individual defendants, would be open to inspection by defense attorneys and the value of the confidential files kept by government agencies would be completely lost, with no value to the individual defendant involved in the procedure which led to such examinations.

Defendant finally contends that the failure of the trial court to make a record of the *in camera* inspection of the I. B. I. file was ground for reversal. Under Supreme Court Rule 415(f) it is provided:

"Upon request of any person, the court may permit any showing of cause for denial or regulation of disclosures, or portion of such showing, to be made *in camera*. A record shall be made of such proceedings. If the court enters an order granting relief following a showing *in camera*, the entire record of such showing shall be sealed, impounded, and preserved in the records of the court, to be made available to the reviewing court in the event of an appeal."

■■ Defendant contends that since no transcript was made of the *in camera* inspection, Supreme Court Rule 415(f) has not been complied with and that he has thereby been denied effective appeal for lack of record upon which to argue. There was, however, no "proceeding *in camera*." The trial judge returned to his chambers taking along Agent Barrett

to answer any questions he might have. Neither counsel was present. Further, the trial judge did state, on the record, the reasons for his denial of disclosure. The I.B.I. agent was examined by the court and by defense counsel as to the procedures of compiling the file, all on record. The file was sealed and transmitted to this court for review. We now see no purpose of interpreting Rule 415(f) to require that a transcript be made of the *in camera* inspection by the judge, where there has been no "proceeding" but rather only his inspection. We conclude, therefore, that the sealing and transmission to this court of the I.B.I. file was sufficient compliance with Rule 415(f) (for a similar procedure see *People v. Jenkins*, No. 12376, 4th Dist. Order, filed May 6, 1974).

For the reasons stated, therefore, the judgment of the circuit court is affirmed.

Affirmed.

STOUDER, P. J., and STENGEL, J., concur.